## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

MICHELLE OGDEN, as Personal
Representative of the Estate of
ZACHARI JOHNSON,

     Plaintiff,

vs.

UNITED STATES OF AMERICA, et
al.,

     Defendants.

4:16-CV-3193

MEMORANDUM AND ORDER

  This case presents relatively straightforward facts, but has become procedurally complicated. So, this matter is before the Court on a motion to dismiss (filing 8), motion to extend the time to complete service of process (filing 14), motion for leave to file a second amended complaint (filing 15), and a motion to strike (filing 20) a second amended complaint (filing 19) that was filed without leave.

  For the following reasons, the Court will grant the motion to dismiss, dismissing the plaintiff's claims against the individual defendants for lack of jurisdiction because they are were not served with process, and are immune from suit in their official capacities. The Court will grant the motion to strike the second amended complaint, and deny the plaintiff's motion for leave to file an amended complaint because the proposed amendment would also be futile. And the Court will deny the plaintiff's motion for an extension of time to serve process, because that motion is moot.

# I. BACKGROUND

The plaintiff in this case is Michelle Ogden, personal representative of the Estate of Zachari Johnson. Filing 3 at 1. Johnson was tragically shot and killed on the premises of Offutt Air Force Base, and his death is the underlying cause of this litigation.

There are several defendants in this case, but they fall into four general categories. The primary defendant is the United States government. Filing 3. (The United States has answered the plaintiff's complaint, *see* filing 11, and the plaintiff's claims against the United States are not at issue in this order.) The next defendant is Douglas Bickal, the civilian security guard who shot Johnson. Filing 3 at 3. The "Air Force Defendants" are Michael B. Donley, Deborah Lee James, C. Robert Kehler, John E. Hyten, Michael J. Allshouse, and Marty Reynolds, all of whom have held relevant positions in the Air Force chain of command for Offutt AFB. Filing 3 at 3. And the "Unnamed Defendants" are four John Doe defendants responsible for Offutt AFB's security forces. Filing 3 at 3-4.

Johnson was shot and killed on June 4, 2012, after his (presumably unauthorized) entry onto Offutt AFB's grounds. Filing 3 at 7.[1] He entered through the commercial truck entrance, and was pursued by Offutt AFB

---

[1] Although many of the issues in this case are presented through other motions, disposing of them will require the Court to determine whether the plaintiff pled a claim for relief. Accordingly, the plaintiff will be given the procedural protections she would be entitled to under Fed. R. Civ. P. 12(b)(6): the Court will accept as true all facts pleaded by the plaintiff, and grant all reasonable inferences from the pleadings in her favor. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). But a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* at 678-79.

security and Bellevue, Nebraska police officers. Filing 3 at 7. Johnson attempted to force his way off the base, and struck a parked vehicle and concrete fixture at a gate. Filing 3 at 7.

Bickal was on duty at that gate, and approached Johnson's vehicle with his sidearm drawn. Filing 3 at 8. Bickal was about 6 feet from Johnson's driver's side door, and a Bellevue officer with his sidearm drawn was about 15 feet behind Johnson's vehicle. Filing 3 at 9. Johnson was unarmed. Filing 3 at 8. Bickal ordered Johnson to raise his hands, and Johnson complied. Filing 3 at 8. But then Johnson's vehicle lurched forward, and Bickal fired his weapon three times, killing Johnson. Filing 3 at 9.

The plaintiff lodged an administrative claim pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346 & 2671 *et seq.*, and the Air Force acknowledged receipt of the claim in a letter dated December 18, 2013. Filing 16-4; filing 16-5. The Air Force denied the claim on June 22, 2016. Filing 16-8. The plaintiff filed this case on December 21, 2016, just before the 6-month post-denial statute of limitations for her FTCA claim expired. Filing 1; *see* 28 U.S.C. § 2401(b). No summons was requested on the initial complaint, and the plaintiff filed an amended complaint on February 3, 2017. Filing 3. That complaint alleged eight claims for relief: three constitutional tort claims (excessive force, failure to train, and failure to supervise) and five state-law tort claims (wrongful death, "fear of impending death," negligent hiring, negligent supervision and entrustment, and negligence).[2] Filing 3.

On June 20, the United States answered, filing 11, and the Air Force Defendants moved to dismiss, filing 8, arguing in part that the case should be

---

[2] Although the constitutional claims are presented under the heading of "42 U.S.C. §1983 Constitutional Violations," filing 3 at 12, it is apparent from the complaint that they are brought pursuant to *Bivens v. Six Unknown Agents,* 403 U.S. 388 (1971), filing 3 at 1.

dismissed pursuant to Fed. R. Civ. P. 4(m) for failure to complete service on them within 90 days of filing the complaint, filing 10 at 3-5. By that time, it was 7 months since the case had been filed.[3] And the motion also argued for dismissal of all the individual defendants, including Bickal, for failure to state a claim. Filing 10.

The Air Force Defendants argued, in part, that extending the plaintiff's time to serve process would be futile, because the complaint did not state a claim against them. Filing 10 at 4-5. The plaintiff argued otherwise. Filing 16. The plaintiff also filed a separate motion for an extension of time to effect service. Filing 14. And the plaintiff moved for leave to file a second amended complaint, which would have added a reference to the Fourth Amendment and clarified that the Air Force Defendants and Unnamed Defendants were being sued in their individual capacities. Filing 15. But before that motion was ruled on—indeed, just 5 days later—the plaintiff filed her second amended complaint without leave to do so. Filing 19. The individual defendants moved to strike the second amended complaint. Filing 20.

## II. DISCUSSION

It is important to clarify, at the outset, who the parties are, and what the claims are. But to do that, it is first necessary to clarify what the pleadings are, which is the issue presented by the defendants' motion to strike (filing 20).

---

[3] An amended complaint does not toll the service period or reset it as to defendants named in the original complaint. *Lee v. Airgas Mid-S., Inc.*, 793 F.3d 894, 898 (8th Cir. 2015).

## 1. MOTION TO STRIKE

The plaintiff filed her initial complaint on December 21, 2016. Filing 1. The plaintiff could amend her complaint once as a matter of course within 21 days after serving it. Fed. R. Civ. P. 15(a)(1)(A). So—not having served it at all—she filed her amended complaint on February 3, 2017. Filing 3.

She filed a motion for leave to file a second amended complaint on July 26 but, without waiting for leave, filed her second amended complaint on August 1. At that point, though, she had already used her single amendment as of right. *See* Rule 15(a)(1). So, she could amend her pleading "only with the opposing party's written consent or the court's leave." Rule 15(a)(2). She had neither. And she has not explained filing the second amended complaint, because she did not respond to the defendants' motion to strike it (filing 20).

The Court will, therefore, grant the motion to strike, and strike the second amended complaint (filing 19). The plaintiff's operative complaint is her first amended complaint (filing 3).

## 2. MOTION TO DISMISS

The plaintiff's operative complaint lists the parties set forth above: the United States, Bickal, the Air Force Defendants, and the Unnamed Defendants. Filing 3. But the complaint is silent as to the capacity in which Bickal, the Air Force Defendants, and the Unnamed Defendants are sued. Filing 3. In other words, the complaint does not say whether they are being sued in their official capacities or their personal, individual capacities. *See, generally*, *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). And if a plaintiff's complaint is silent about the capacity in which she is suing a public official, the Court interprets the complaint as including only official-capacity claims. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). It must be

presumed that the defendants are sued only in their official capacities. *Id.*[4] So, the defendants to the operative complaint are the United States and a number of individual defendants in their official capacities, and *only* their official capacities.

The complaint also asserts the eight claims for relief set forth above, but is not always clear about which claims are asserted against which defendants. The first claim—"use of excessive force"—is clearly directed solely at Bickal. The remaining seven claims, however, are simply asserted against the "defendants" generally.

But the United States is not a proper defendant for the plaintiff's constitutional claims. *Bivens* claims cannot be brought against the United States itself. *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994). And constitutional claims cannot be remedied through the FTCA. *Washington v. Drug Enf't Admin.*, 183 F.3d 868, 873 (8th Cir. 1999). So, the plaintiff's *Bivens* claims can be asserted only against individual defendants.

The plaintiff's state-law claims, however, can only be asserted against the United States, and not any individual defendants. When someone is injured by a tort committed by an employee of the United States who is acting within the scope of his employment, that employee cannot be sued— rather, the injured person must sue the United States which is liable in its employee's stead. *Knowles v. United States*, 91 F.3d 1147, 1150 (8th Cir.

---

[4] The Court is aware of the circumstances in which this stringent pleading rule may be treated with some flexibility. *See Wealot v. Brooks*, 865 F.3d 1119, 1124 n.4 (8th Cir. 2017). But here, the defendants have specifically asserted both the deficiency of the complaint and their immunity defense. *See* filing 10 at 8-9. And, as will be explained below, the plaintiff's potential individual-capacity claims would lack merit in any event.

1996); *see United States v. Smith*, 499 U.S. 160, 161-62 (1991); *see also Simmons v. Himmelreich*, 136 S. Ct. 1843, 1850 (2016).

In short, victims of purposeful wrongdoing on the part of federal officers can bring (1) constitutional tort claims against those officers under *Bivens*, and (2) specified intentional tort claims against the United States under the FTCA. *Washington*, 183 F.3d at 873. As noted above, the United States has answered, and the FTCA claims brought against the United States are not implicated in this set of motions. It is the individual defendants, and the constitutional claims, with which the Court is concerned. The motion to dismiss (filing 8) raises a number of issues, but the Court will grant the motion on the jurisdictional grounds that it is obliged to consider first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998); *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 895 (8th Cir. 2015).

First, the Air Force Defendants have not been served and, as a result, the Court lacks jurisdiction over them. *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993); *see Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). When process and service of process are questioned on a pretrial motion to dismiss, it is the plaintiff's burden to establish a prima facie case. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995). And here, the plaintiff cannot do so, conceding that she has failed to effect service on the Air Force Defendants. Filing 16 at 5.

Second, as explained above, the complaint only pleads claims against the individual defendants in their official capacities. A suit against federal officials in their official capacities is treated as a suit against the United States, and "a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity." *Buford v. Runyon*, 160 F.3d

1199, 1203 (8th Cir. 1998); *see Searcy v. Donelson*, 204 F.3d 797, 798 (8th Cir. 2000); *Phelps v. U.S. Fed. Gov't*, 15 F.3d 735, 739 (8th Cir. 1994). And sovereign immunity is jurisdictional. *Meyer*, 510 U.S. at 475. Accordingly, the Court lacks jurisdiction over all the individual defendants in their official capacities—which is, again, the only capacities in which they were sued in the plaintiff's operative complaint.

On those grounds, the Court will dismiss the plaintiff's claims against all of the individual defendants—Bickal, the Air Force Defendants, and the Unnamed Defendants—without prejudice.

### 3. MOTION FOR LEAVE TO AMEND

Recognizing the problems presented by her failure to specify that the individual defendants were being sued in their individual capacities, the plaintiff has filed a motion for leave to amend her complaint. Filing 15. The only meaningful difference between the operative complaint and the proposed second amended complaint is that in the proposed second amended complaint, all the individual defendants are sued in their individual (and *only* their individual) capacities. *Compare* filing 3 *with* filing 15 at 3-20.[5]

In general, courts are encouraged to allow amendments liberally. *Shen v. Leo A. Daly Co.*, 222 F.3d 472, 478 (8th Cir. 2000). "[A]bsent a good reason for denial—such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment—leave to amend should be granted." *Kozohorsky v. Harmon*, 332 F.3d 1141, 1144 (8th Cir.

---

[5] The proposed amended complaint also adds a new reference to the Fourth Amendment, *compare* filing 15 at 3 *with* filing 3 at 1, but because the Fourth Amendment was always cited in the complaint itself, *see* filing 3 at 13, that amendment is not substantive.

2003). But there is no absolute right to amend a pleading. *Hammer v. City of Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003). And the Court should deny a motion for leave to amend where the amendment would be futile, because the amended complaint could not withstand a motion to dismiss pursuant to Rule 12(b)(6). *Zutz v. Nelson*, 601 F.3d 842, 850-51 (8th Cir. 2010). The proposed amendment here—the addition of individual-capacity *Bivens* claims—would be futile for two reasons: (a) the *Bivens* claims are time-barred, and (b) the plaintiff's allegations are insufficient to establish supervisory liability of the Air Force Defendants or Unnamed Defendants.

(a) Statute of Limitations

The limitations period for a *Bivens* action, like that of a § 1983 action, is governed by the statute of limitations for personal injury actions in the state in which the claim accrues. *Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir. 1995). In Nebraska, that's a 4-year limitations period. *Bridgeman v. Nebraska State Pen*, 849 F.2d 1076, 1077-78 (8th Cir. 1988) (citing Neb. Rev. Stat. § 25-207); *Bauers v. City of Lincoln*, 514 N.W.2d 625, 647 (Neb. 1994). There is no dispute that this case, which was filed on December 21, 2016, was filed more than 4 years after the defendant's June 4, 2012 shooting.[6]

---

[6] The Court assumes, without deciding, that any amended complaint adding individual-capacity defendants would relate back to the original complaint. *See Hayes v. Faulkner Cty., Ark.*, 388 F.3d 669, 675-76 (8th Cir. 2004). That said, there is at least a colorable argument, particularly given the lack of service, that the individual defendants *still* haven't been sued. *See Marchant v. City of Little Rock, Ark.*, 741 F.2d 201, 206 (8th Cir. 1984). That's particularly true for the Unnamed Defendants. *See Foulk v. Charrier*, 262 F.3d 687, 696 (8th Cir. 2001); *cf. Lee*, 793 F.3d at 987-98.

But the plaintiff argues that the statute of limitations was tolled by her administrative claim. The Court looks to state law for tolling rules, just as it does for the length of statutes of limitations, *Wallace v. Kato*, 549 U.S. 384, 394-95 (2007); *Bridgeman*, 849 F.2d at 1078. The plaintiff points to the Nebraska Supreme Court's decision in *Bauers*, 514 N.W.2d 625.

In *Bauers*, several former Lincoln firefighters sought reimbursement from the city for amounts paid to pension funds and deductions made for workers' compensation payments. *Id.* at 627-29. They began by presenting claims to the city pursuant to Neb. Rev. Stat. § 15-840. *Id.* at 629-30. When the city denied their claims, they sued, in part asserting pursuant to § 1983 that the city had denied their constitutional rights by depriving them of their property. *Id.* at 628-29. The state district court dismissed the claims as time-barred, but the Nebraska Supreme Court reversed, explaining:

> After applying the 4-year statute of limitations to the dates on which the firefighters' claims accrued, we find that several of the firefighters have viable claims under their § 1983 causes of action. As stated above, we find that the firefighters' § 1983 actions were properly raised for the first time in their appeals to the district court. The statute of limitations applicable to the § 1983 actions was tolled when the firefighters filed their claims with the City. Had the City paid the claims, the firefighters' § 1983 actions would have been extinguished. We therefore find that the statute of limitations was tolled during the period in which their claims were under consideration by the City.

*Id.* at 634.

The plaintiff relies on *Bauers* to support her argument that the statute of limitations for her individual-capacity constitutional claims was tolled while her FTCA claim was under submission to the Air Force. Filing 16 at 5-8. But *Bauers* is clearly distinguishable.

*Bauers* carved out a narrow exception to more generally applicable principles relating to statutes of limitations. For one thing, the fact that a recovery on one claim for relief may be offset against the recovery for a second claim for relief does not mean that pursuing the first claim for relief tolls the statute of limitations for the second. *See Tilt-Up Concrete, Inc. v. Star City/Federal, Inc.*, 621 N.W.2d 502, 508 (Neb. 2001). If the plaintiff is not barred from prosecuting its second claim for relief, the statute of limitations is not tolled. *See id.*

Furthermore, the fact that a statute of limitations may be tolled as to one defendant does not mean that it is tolled as to other defendants. *See Andres v. McNeil Co.*, 707 N.W.2d 777, 789 (Neb. 2005); *Casey v. Levine*, 621 N.W.2d 482, 489-90 (Neb. 2001); *cf. Gurske v. Strate*, 87 N.W.2d 703, 704 (Neb. 1958). So, for instance, in *Andres*, while one defendant was estopped by fraudulent concealment from asserting the defense of the statute of limitations, another defendant who had not participated in the concealment was not barred from asserting the defense. 707 N.W.2d at 789. And in *Casey*, the continuing representation doctrine did not toll the statute of limitations for medical malpractice against a hospital, when the continuing treatment was provided by an affiliated but independent physician. 621 N.W.2d at 489.

The difference between this case and *Bauers*, then, is twofold. First, in *Bauers*, both the administrative claims and the constitutional claims were seeking a return of the same property. In other words, the case involved a *wholly* coextensive injury, not just the possibility of a setoff or credit against

a recovery. But more importantly, the parties to whom the benefit of the statute of limitations enures here—the individual defendants, in their individual capacities—were not part of the administrative claim against the Air Force. They were, in fact, just employees of the Air Force. *Cf. Vincent v. Peter Pan Bakers, Inc.*, 153 N.W.2d 849, 851 (Neb. 1967).

"The main purpose of the statute of limitations is to notify the defendant of a complaint against it within a reasonable amount of time so that the defendant is not prejudiced by having an action filed against it long after the time it could have prepared a defense against the claim." *W. Omaha Invs. v. Sanitary & Imp. Dist. No. 48 of Sarpy Cty.*, 420 N.W.2d 291, 299 (Neb. 1988). A defendant's conduct in the processing of an administrative claim can toll the statute of limitations as to *itself*. *See Woodard v. City of Lincoln*, 588 N.W.2d 831, 837 (Neb. 1999); *see CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2183 (2014). But the plaintiff directs the Court to no authority suggesting that the individual defendants, who were entitled to the notice and protection provided by the statute of limitations, should be prejudiced by the conduct of a party with whom they were not in privity, *see Vincent*, 153 N.W.2d at 851, and over whom they had no control.

The Court's task on this issue is to predict how the Nebraska Supreme Court would rule. *See Adams v. Toyota Motor Corp.*, 867 F.3d 903, 919 (8th Cir. 2017). The Court has little doubt that if confronted with the question, the Nebraska Supreme Court would conclude that *Bauers*, to the extent that holding retains its vitality, is limited to situations in which the defendant against whom the plaintiff's constitutional claim is brought is the same defendant to which the administrative claim that tolled the statute of limitations was submitted. That circumstance is not present here, so the

plaintiff's claims against the individual defendants in their individual capacities are time-barred.

(b) Supervisory Liability

In addition, the proposed second amended complaint does not state a claim against the Air Force Defendants or the Unnamed Defendants, because it does not allege a factual basis for supervisory liability. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676. The purpose of *Bivens* is to deter the officers, not to hold officers responsible for acts of their subordinates. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017). So, because vicarious liability is inapplicable to *Bivens* suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676.

A supervisor may be held individually liable if he or she directly participates in the constitutional violation or fails to train or supervise the subordinate who caused the violation. *Brockington v. City of Sherwood*, 503 F.3d 667, 673 (8th Cir. 2007).[7] The standard of liability for failure to train is deliberate indifference. *Brockington*, 503 F.3d at 673. And the standard of liability for failure to supervise is demonstrated deliberate indifference or tacit authorization of the offensive acts. *Id.* It is these theories on which the plaintiff relies in suing the Air Force Defendants and Unnamed Defendants.

But that poses the question, raised by the defendants, of whether they are entitled to qualified immunity. Filing 21 at 8-10. Under the doctrine of

---

[7] For these purposes, *Bivens* cases and § 1983 cases are interchangeable. *See Iqbal*, 556 U.S. at 675-76; *Mendoza v. United States Immigration & Customs Enf't*, 849 F.3d 408, 415 n.3 (8th Cir. 2017).

qualified immunity, government officials are generally immune from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Mendoza*, 849 F.3d at 416. It gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law. *Id.*

To determine whether a government official is entitled to qualified immunity, we must ask (1) whether the official's action violated a constitutional right; and (2) whether the violated right was clearly established. *Id.* The defendants are entitled to qualified immunity unless the answer to both of these questions is yes. *Id.* A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. *Id.* at 416-17. In other words, the right violated must have been established beyond debate. *Id.* at 417.

More particularly, in the context of training and supervision, "there must first be an obvious need for the training before a failure to have it will be considered a constitutional violation." *Id.* at 420.

> When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) *received notice of a pattern* of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts.

*Id.* (quotation omitted); *see S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015); *Livers v. Schenck*, 700 F.3d 340, 355-56 (8th Cir. 2012). In this context, "deliberate indifference is a subjective standard that requires personal knowledge of the constitutional risk posed by inadequate supervision[.]" *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017) (quotation omitted).[8] "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient." *Krigbaum*, 808 F.3d at 340. And "[t]o impose supervisory liability, other misconduct must be very similar to the conduct giving rise to liability." *Livers*, 700 F.3d at 356; *accord Krigbaum*, 808 F.3d at 340.

There are no allegations of such a pattern here. The complaint alleges, in fairly general terms, that Bickal had "displayed certain behaviors and tendencies" and was "emotionally unstable and unreliable" such that he should have been relieved of his duties. Filing 15 at 6-7. But that does not meet the standard necessary to overcome a qualified immunity defense. Nor do the plaintiff's conclusory allegations of the inadequacy of the "policies and procedures in place to train Bickal" suffice. Filing 3 at 14. Those are the sort of "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of the claim. *See Iqbal*, 556 U.S. at 681. As such, they are not entitled to the presumption of truth. *Id.* "In the context of determining whether there is a violation of a clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on . . . an official charged with violations arising from his or

---

[8] The standard is subjective because the issue is qualified immunity from individual liability for failure to train or supervise. *Id.* If a deliberate indifference claim is asserted against, for instance, a municipality, then an objective standard applies. *Id.*

her superintendent responsibilities." *Id.* at 677. The plaintiff's complaint lacks the "well-pleaded factual allegations," *id.* at 679, necessary to support an inference of such purpose.

And while the allegations are deficient with respect to all of the Air Force Defendants and Unnamed Defendants, they are even more deficient with respect to some. The Air Force Defendants are the former and current Secretaries of the Air Force, commanders of the United States Strategic Command, and commanders of the 55th Wing of the Air Force. Filing 15 at 5. There is nothing, in the complaint or elsewhere, to connect their supervisory duties to the performance of a civilian security guard at a particular Offutt AFB gate. The Unnamed Defendants are the former and current commanders of the 55th Security Forces Squadron, and two individuals who are described only functionally: the individuals who were respectively "tasked with implementing and administering" and "enforcing" the personnel reliability program of the 55th Security Forces Squadron. Filing 15 at 5. In other words, the complaint conclusorily asserts that Bickal's training and supervision were inadequate, and then conclusorily describes the defendants as the people in charge of training and supervision, whoever they were. Those allegations, such as they are, assert nothing more than the sort of "supervisory liability" that the Supreme Court has expressly rejected in a *Bivens* action. *Id.* at 677.[9]

In sum, all of the plaintiff's individual-capacity claims are barred by the statute of limitations, and the plaintiff has not stated a claim against the

---

[9] And there is even less of a basis—in fact, no conceivable basis at all—for trying to sue the *current* Secretary of the Air Force and *current* commanders of the Strategic Command, 55th Wing, and 55th Security Forces Squadron. The plaintiff concedes—in fact, alleges—that they did not hold those positions at or before the time of the shooting. Filing 15 at 5. Even if there was some basis for supervisory liability, defendants who weren't supervisors during the relevant time period can't be held personally liable. *Brockington*, 503 F.3d at 675.

Air Force Defendants or Unnamed Defendants because her allegations establish no basis for supervisory liability.[10] Accordingly, her proposed second amended complaint would be futile, and the Court will deny leave to file it.

### 4. MOTION TO EXTEND TIME FOR SERVICE

Finally, the plaintiff has moved pursuant to Rule 4(m) for additional time to serve the Air Force Defendants and Unnamed Defendants. Rule 4(m) generally provides that an action should be dismissed without prejudice as to any defendant not served within 90 days, but that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

Rule 4(m) does not define good cause, and courts have not given conclusive meaning to the phrase. *Kurka v. Iowa Cty.*, 628 F.3d 953, 957 (8th Cir. 2010) (citing 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137). But a showing of good cause requires at least good faith and some reasonable basis for noncompliance with the rules. *Id.* Good cause is likely (but not always) to be found when (1) the plaintiff's failure to complete service in timely fashion is a result of the conduct of a

---

[10] To be clear—to the extent that the defendants are arguing that Bickal would be entitled to qualified immunity, filing 10 at 14, the Court is not persuaded by that argument. The well-pleaded facts relating to the shooting, taken as true, at least plausibly "give rise to an entitlement to relief" that would not be barred by qualified immunity. *See Iqbal*, 556 U.S. at 679. The proposed complaint alleges that Johnson was unarmed and compliant, and that his vehicle was only rolling forward slowly and posed no threat to anyone. Filing 15 at 10-11. If those facts were taken as true, they *could* describe a violation of clearly-established law. *See Tennessee v. Garner*, 471 U.S. 1, 20-21 (1985). Perhaps the evidence would show a risk sufficient to warrant use of deadly force, *see Brosseau v. Haugen*, 543 U.S. 194, 199-200 (2004), but qualified immunity for Bickal is not shown on the face of the proposed complaint. The claim would, of course, still be time-barred.

third person, (2) the defendant has evaded service of the process or engaged in misleading conduct, (3) the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, or (4) the plaintiff is proceeding *pro se* or in forma pauperis. *Id.* But whether or not the standard of good cause has been satisfied is largely dependent upon the facts of each individual case. *Id.*[11]

Beyond that, even if good cause is lacking, the Court still has discretion to extend the time for service where the plaintiff's failure to serve was the result of "excusable neglect." *Id.* at 958-59. Excusable neglect is an elastic concept that empowers courts to provide relief where a party's failure to meet a deadline is caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control. *Id.* at 959. The determination of whether neglect is excusable is at bottom an equitable one, taking account of all relevant circumstances surrounding the omission. *Id.*

In determining whether neglect is excusable, the following factors are particularly important: (1) the possibility of prejudice to the defendant, (2) the length of the delay and the potential impact on judicial proceedings, (3) the reason for the delay, including whether the delay was within the party's reasonable control, and (4) whether the party acted in good faith. *Id.* And the

---

[11] The Air Force Defendants argue that the Court should deny an extension of time because it would be futile. Filing 10 at 4-5; filing 21 at 5. Futility may be a relevant consideration when process was served but insufficient, and the Court must decide whether to dismiss the case or merely quash the service and permit the plaintiff a chance to re-serve. *See Dahl v. Kanawha Inv. Holding Co.*, 161 F.R.D. 673, 681 (N.D. Iowa 1995) (citing *Gregory v. United States Bankruptcy Court,* 942 F.2d 1498, 1500 (10th Cir. 1991)); *see also Marshall v. Warwick*, 155 F.3d 1027, 1032 (8th Cir. 1998). But when no service was effected, under Rule 4(m), the Court "must focus primarily on the plaintiff's reasons for not complying with the time limit in the first place." *Kurka*, 628 F.3d at 958.

Court must weigh the effect on the party requesting the extension against the prejudice to the defendant. *Id.*

Neither party has directed its briefing at this relevant Eighth Circuit authority explaining Rule 4(m). *See* filing 14; filing 21. Accordingly, there is no contention here that "excusable neglect" can be found. But the plaintiff, citing two out-of-jurisdiction district court cases, does contend that "good cause" exists for her failure to effect service. Filing 14 at 2. Her argument is best understood as asserting that she "has acted diligently in trying to effect service" but that "there are understandable mitigating circumstances." *Kurka*, 628 F.3d at 957. Her evidence is intended to establish, essentially, that despite the best efforts of her counsel, she has not served the Air Force Defendants because she cannot locate them, and has not served the Unnamed Defendants because she cannot identify them. *See* filing 14-1.

But the plaintiff's evidence still leaves the Court with questions about her diligence in attempting to effect service. Her difficulty in locating some of the defendants does not, for instance, explain why summons was not requested as to *any* of the defendants until 44 days after her initial complaint was filed. *See* filing 4. Nor does it explain why that summons was not served on the United States for another 49 days, or Bickal for another 56 days. *See* filing 6.[12] While that is only a few days past the 90-day deadline of Rule 4(m), it does pose a fair question about whether the plaintiff was diligently pursuing service from the start. If, indeed, it is "abundantly clear that [the plaintiff] will not be able to determine the necessary information to complete

---

[12] Although no return of service has been filed, the Court can infer from the answer deadlines represented in the defendants' motion for an extension of time to respond (filing 6) that the United States was served on or about March 24, 2017, and Bickal was served on or about March 31. *See* Rule 12(a)(1)(A)(i).

service on these individuals without information or discovery from the Defendant the United States of America to whom the information is readily available[,]" filing 14-1 at 2, then that would suggest that diligence required serving the United States as promptly as possible.

Nor did the plaintiff request expedited discovery in aid of service. *See Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1049-50 (N.D. Iowa 2008); *see also Oglala Sioux Tribe v. Van Hunnik*, 298 F.R.D. 453, 455-56 (D.S.D. 2014). And while the Air Force Defendants' home addresses might be hard to find, there is at least the possibility that some of them—particularly those who are *currently* serving in relevant positions—could have been served at work. *See* Rule 4(i)(3) (permitting service on an individual-capacity defendant under state law pursuant to Rule 4(e)(1)); Neb. Rev. Stat. § 25-508.01(1); *Anthony K. v. State*, 855 N.W.2d 802, 811 (Neb. 2014) (service by certified mail must be reasonably calculated to notify the defendants, in their individual capacities, of the lawsuit). Of course, a request for expedited discovery might have been denied, and trying to serve the Air Force defendants at their place of employment might have been ineffective. *See Anthony K.*, 855 N.W.2d at 811. But there is a colorable argument to be made that "act[ing] diligently in trying to effect service[,]" *Kurka*, 628 F.3d at 957, at least required the attempt.

That said, what the Court finds dispositive with respect to the plaintiff's motion to extend is that, as the Court understands the plaintiff's position, the motion is moot. The operative complaint names the United States and the individual defendants, in their official capacities, as defendants. The official-capacity defendants weren't served, but they've been dismissed on jurisdictional grounds that the Court was obliged to consider *sua sponte*, even pre-service. *See* Rule 12(h)(3); *Givins v. Brisco*, 515 F. App'x

624, 624-625 (8th Cir. 2013); *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011). And when the plaintiff's opposition brief is read in conjunction with her motion for leave to amend her pleading, it is apparent that the plaintiff is abandoning any official-capacity claims. *See* filing 15; filing 16 at 10-11. No defendants have been served in their individual capacities, either— but then, no individual-capacity defendants have been named in an operative pleading, and the Court has denied the plaintiff leave to name them.

In short, for reasons wholly separate from failure to serve process, the only remaining defendant is the United States. And the United States has been served and has answered. *See* filing 11. Because the only proper defendant in the operative pleading has been served, the plaintiff's motion for an extension of time to serve process is moot, and will be denied as such.

### III. CONCLUSION

To summarize: Bickal, the Air Force Defendants, and the Unnamed Defendants, in their official capacities, are dismissed as parties. That means that the plaintiff's constitutional claims, which can only be asserted against individual defendants, are dismissed as well. The remaining parties are the plaintiff and the United States, and the plaintiff's remaining claims are her five state-law tort claims (wrongful death, "fear of impending death," negligent hiring, negligent supervision and entrustment, and negligence).

IT IS ORDERED:

1.  The defendants' motion to strike (filing 20) is granted.

2.  The plaintiff's second amended complaint (filing 19) is stricken.

3.    The defendants' motion to dismiss (filing 8) is granted.

4.    The plaintiffs' claims against Bickal, Donley, James, Kehler, Hyten, Allshouse, Reynolds, and John Does #1-4 are dismissed without prejudice.

5.    The plaintiff's constitutional claims are dismissed without prejudice.

6.    Bickal, Donley, James, Kehler, Hyten, Allshouse, Reynolds, and John Does #1-4 are terminated as parties.

7.    The plaintiff's motion for leave to file an amended complaint (filing 15) is denied.

8.    The plaintiff's motion to extend (filing 14) is denied as moot.

9.    This case is referred to the United States Magistrate Judge for case progression.

Dated this 14th day of February, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge

- 22 -